UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                        :
MICHAEL LYLES,                                          :
                                                        :
                            Plaintiff,                  :          CASE NO. 1:09-CV-01960
                                                        :
vs.                                                     :          OPINION & ORDER
                                                        :          [Resolving Doc. No. 47 & 51.]
ERIC K. SHINSEKI,                                       :
Secretary of the Dept. of Veterans Affairs,             :
                                                        :
                            Defendant.                  :
                                                        :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        In this Title VII failure-to-rehire retaliation case, Defendant Veterans Affairs moves for

summary judgment.  [Doc. 47.]  Plaintiff Michael Lyles opposes the motion.  [Doc. 49.]  Defendant

has replied.  [Doc. 50.]

        For the following reasons, this Court **DENIES** Defendant's motion for summary judgment.

Because summary judgment is denied, the Court **DISMISSES** as moot Defendant's motion for leave

to file Charles Franks's amended declaration.  [Doc. 51.]

                                      **I.  Background**

        Plaintiff Michael Lyles sues his former employer Eric Shinseki, in his official capacity as

Secretary of Veterans Affairs, for retaliatory non-rehire.  Lyles says Defendant refused to rehire him

because of his prior Equal Employment Opportunity Commission ("EEOC") complaints.  [Doc. 18.]

The Court must consider whether Defendant Veterans Affairs' decision not to rehire Lyles was

Case No. 1:09-CV-01960
Gwin, J.

legitimately based on his poor work performance or, conversely, his numerous EEOC complaints.

From April 2000 until his resignation in October 2004, Plaintiff Lyles, an Army veteran, worked at the Louis Stokes Veterans Affairs Medical Center as a telephone operator and housekeeping aide.  [Doc. 49 at 5.]  Plaintiff's employment with Veterans Affairs was rocky. Although Lyles contests their validity, his coworkers lodged many complaints against him including: (1) three allegations Lyles was intoxicated at work; (2) an allegation that Lyles made his coworkers uncomfortable; (3) two allegations Lyles came late to work and was not doing his job; and (4) six allegations that Lyles was sleeping at work.  [Doc. 49 at 6.]

Lyles says the complaints were false and attributes them to coworkers' jealousy.  Because of Lyles's years of active and reserve Army duty, he received additional seniority at Veterans Affairs. [Doc. 49 at 5.]  This seniority, Lyles continues, caused friction between him and the other phone operators in his department.  [Doc. 49 at 6.]  As a result of this friction, says Lyles, his coworkers lodged false and merit-less complaints about his performance.  [Doc. 49 at 6.]  Defendant disputes this supposed tension, and says there is no real advantage to seniority in the telephone unit.  [Doc. 50 at 4.]

Veterans Affairs says it was unable to verify the complaints about Plaintiff and his coworkers, but only because it had no way of directly monitoring Plaintiff and his coworkers.  Lee Blockum supervised Plaintiff Lyles while Lyles was a telephone operator.  But because Lyles worked the 4:00pm-to-midnight shift, Blockum had  mostly indirect contact with Lyles.  [Doc. 47-1 at 8.] For example, Lyles's coworkers would report he was intoxicated at work, but Blockum would not receive the report until the next morning.  As a result, Blockum was unable to verify the complaints. Nonetheless, after receiving numerous complaints, Blockum verbally warned Lyles about his

Case No. 1:09-CV-01960
Gwin, J.

conduct and promised Lyles's complaining coworkers that he would "get tough" with him.  [Doc. 49 at 6.]  However, Blockum never formally disciplined Lyles and gave Lyles a passing evaluation. [Doc. 50 at 14.]

After Blockum warned Lyles, in April 2002 Lyles filed an EEOC complaint alleging that his complaining coworkers (all females) were out-to-get him fired.  [Doc. 49 at 7.]  Plaintiff says he was discriminated against on the basis of sex, subjected to non-sexual harassment, and denied the right to work third shift.  [Doc. 47-1 at 14.]  The EEOC ultimately dismissed Plaintiff's complaint.  [Doc. 47-1 at 14.]  Still, Blockum was less-than-happy with Lyles's EEOC complaint, although his exact reaction is disputed.  Plaintiff says Blockum "exploded"; Defendant says Blockum was merely "upset" that Lyles did not come to him first to resolve the issue before filing an EEOC complaint. [Doc. 49 at 7; Doc. 50 at 3.]  This factual dispute aside, the assigned EEOC investigator did indeed find Blockum's outburst "unbecoming a manager" and reported it to Blockum's supervisors.  [Doc. 49 at 7.]

In February 2002, Mark Wallace became Blockum's direct and Lyles's indirect supervisor.  [Doc. 49 at 7.]  Wallace was generally aware of the complaints against Lyles, but had no direct contact with him.  [Doc. 49-23.]  Still unhappy with his situation, in June 2002 Lyles requested a transfer to another department saying "a later transfer would benefit the Telephone Unit as well as me [because my] day to day interactions with my coworkers have shown very little improvement. All in all it is my opinion that the morale of the telephone unit would soar if I were assigned somewhere else."  [Doc. 47-2 at 30.]

After no one acted on his transfer request, in October 2003 Lyles filed an EEOC complaint of reprisal, saying Veterans Affairs retaliated against him when he was not selected for transfer.

-3-

Case No. 1:09-CV-01960
Gwin, J.

[Doc.47-1 at 15.]  Again, the EEOC dismissed Plaintiff's complaint.  [Doc. 47-1 at 15.]  But in March 2004, Veterans Affairs transferred Lyles to the housekeeping department.  Six months later, Lyles quit Veterans Affairs in anticipation of a job with the United States Postal Service.  [Doc. 47-1 at 8.]

Following his employment with Veterans Affairs, Lyles worked as a United States Postal Service mail carrier.  [Doc. 47-1 at 12.]  The Postal Service terminated Plaintiff three months later in January 2005 for unsatisfactory performance.  [Doc. 47-1 at 12.]  Plaintiff then sought other federal employment, and the National Parks Service hired plaintiff as a telephone operator.  In June 2006, after a complaint that he was not adequately assisting the park rangers with their duties, Plaintiff quit his Parks Service job.  [Doc. 47-11 at 2.]

In November 2007, Lyles reapplied for a telephone operator position—DEU159943 (the "DEU Position")—with Veterans Affairs.  [Doc. 47-1 at 12.]  Plaintiff says his former coworkers —the same coworkers who had previously lodged numerous complaints against him—asked him to reapply.  [Doc. 49 at 9.]  Plaintiff applied via the Delegated Examining Unit process.  Under this procedure, the Examining Unit screens applicants, not Veterans Affairs.  [Doc. 47-1 at 12 n.2.]  After its initial screening, the Examining Unit names those applicants that meet the job's requirements and passes the information to Veterans Affairs.  [Doc. 47-1 at 12 n.2.]  The Examining Unit designated Lyles and one other applicant as eligible.  [Doc. 47-1 at 12.]  Veterans Affairs, however, did not hire Lyles or the other eligible candidate for the DEU Position.

In February 2008, Defendant relisted the still vacant telephone operator position—now MPA 08-123 (the "MPA Position")—using a different system that does not give preference to veterans.  [Doc. 49-13.]  Lyles applied but was not hired for the MPA Position.  [Doc. 49 at 11.]  Instead,

-4-

Case No. 1:09-CV-01960
Gwin, J.

Defendant hired a person who had not worked for Veterans Affairs since 1999 and had no telephone-operator experience.  [Doc. 49 at. 7.]

In March 2007, before Plaintiff applied for the DEU and MPA Positions, Defendant's Human Resources Chief Charles Franks had emailed his staff asking them to "advise me if . . . former employee[ Lyles] is under active consideration for any of your vacancies."  [Doc. 49-9 at 1.]  Franks flagged Lyles because of his "record of misconduct before his resignation."  [Doc. 49-9 at 1.]  In response to Franks's request, in November 2007 a human resources specialist emailed Franks and said: "Mr. Lyles applied for [the DEU Position] and his name was forwarded to the selection official on a Certificate of Eligibles.  I believe Lee Blockum is the selecting official."  [Doc. 49-12 at 1.]

When Human Resources Chief Franks learned of Plaintiff's eligibility for the DEU Position, he emailed Mark Wallace, Blockum's and Lyles's supervisor, and told him "[i]t would be a colossal mistake to hire Mr. Lyles."  [Doc. 49-12 at 1.]  Wallace forwarded the email back to the human resource specialist, adding "[d]o not hire Mr. Lyles" to the thread.  [Doc. 49-12 at 1.]  The specialist then forwarded the email to Lee Blockum, saying: "A message from [Chief Franks] regarding an applicant on your DEU certificate."  [Doc. 49-12 at 1.]  Lee Blockum did not forward the message. In 2008, an anonymous person mailed Plaintiff this email chain.  [Doc. 47-1 at 6.]

Defendant says it did not rehire Lyles because of his past shoddy work performance.  Plaintiff says this reason is a mere pretext and brings a claim for retaliatory non-rehire based on his prior EEOC activity.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

Case No. 1:09-CV-01960
Gwin, J.

as to any material fact and that the movant is entitled to judgment as a matter of law." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the non-moving party rely upon mere allegations or denials of its pleadings. Fed. R. Civ. P. 56(e). In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (internal quotation omitted). The non-moving party must adduce more than a

-6-

Case No. 1:09-CV-01960
Gwin, J.

scintilla of evidence to overcome the summary judgment motion.  *Id*.

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party.  *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted).  "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial."  *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)).  Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Martingale*, 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Analysis

With his Amended Complaint, Plaintiff Lyles brings a retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  [Doc. 18.]  In its motion for summary judgment, Defendant says Plaintiff's retaliation claim is limited to his non-selection for the DEU and MPA Positions, because these are the only two positions Plaintiff properly exhausted administrative remedies.  [Doc 47-1 at 1.]  Defendant also says Lyles cannot establish a *prima facie* case of retaliation for prior EEOC activity and, alternatively, its reason for not rehiring Lyles was legitimate and non-pretextual.  [Doc 47-1 at 1.]

### A. Lyles's Prior EEOC Activity

Defendant says Lyles's claims are limited to the DEU Position and the MPA Position because

-7-

Case No. 1:09-CV-01960
Gwin, J.

Lyles failed to exhaust his administrative remedies for all other positions. *See Steiner v. Henderson,*
*354 F.3d 432, 434-35 (6th Cir. 2003).*  Plaintiff, in a terse response, says only that the Court should
consider all positions he applied for since 2004.

Both parties are correct.  Recall, since 2004 Plaintiff has only applied for two positions with
Veterans Affairs: the DEU Position in 2007 and the MPA Position in 2008.  The Court will,
however, consider Plaintiff's prior EEOC activity in its retaliation analysis. *See Hill v. Nicholson,*
*2010 WL 2640261, at *3 (6th Cir., June 24, 2010).*

### B. Retaliation

Plaintiff Lyles says Veteran Affairs violated Title VII when it refused to rehire him in
retaliation for his EEOC complaints.  Title VII prohibits retaliatory actions against employees who
oppose, report, or participate in investigations involving conduct that allegedly violates Title VII.
*See* 42 U.S.C. § 2000e-3(a).  Absent direct evidence of retaliation, claims brought pursuant to Title
VII are subject to the burden-shifting framework announced by the Supreme Court in *McDonnell*
*Douglas Corp. v. Green,* 411 U.S. 792 (1973), and subsequently modified in *Texas Dept. of Comm.*
*Affairs v. Burdine,* 450 U.S. 248 (1981).  *See Newman v. Federal Express Corp.,* 266 F.3d 401, 406
(6th Cir. 2001).  Because Lyles relies on circumstantial evidence, the *McDonnell Douglas* paradigm
applies.

Under *McDonnell Douglas*'s three-step burden shifting framework, Lyles must first set forth
a *prima facie* case of retaliation.  *Newman,* 266 F.3d at 405.  The burden then shifts to Lyles's
employer, Defendant Veterans Affairs, to articulate a legitimate, nonretaliatory reason for its actions.
*Id.*  If Defendant carries this burden, Lyles must then prove by a preponderance of the evidence that
the reasons offered by his former employer are a pretext for retaliation.  *Id.*

-8-

Case No. 1:09-CV-01960
Gwin, J.

On a motion for summary judgment, "a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

*1.* Prima Facie *Case*

To survive Defendant's motion for summary judgment on his retaliation claim, Lyles must provide evidence sufficient to convince a jury that (1) he engaged in protected activity; (2) the Defendant had knowledge of his protected conduct; (3) the Defendant subsequently non-rehired him; and (4) there was a causal connection between the protected activity and the non-rehire. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). In its motion for summary judgment, Veterans Affairs says Lyles cannot establish the second element (knowledge) and the fourth element (causation).

First considering knowledge, Defendant says Mark Wallace, Blockum's and Lyles's supervisor, made the decision not to rehire Lyles, and that Wallace had no knowledge of Plaintiff's prior EEOC activity. [Doc. 47-1 at 14, 22.] Plaintiff responds and says that Lee Blockum, not Wallace, was the hiring decision-maker. And based on Blockum's outburst in front of the EEOC investigator, Plaintiff continues, Blockum clearly had knowledge of Lyles's EEOC complaints.

Supervisor Mark Wallace unequivocally says "I'm the selecting official." [Doc. 49-23.] But a member of Veteran Affairs own human resources department said in an email "I believe Lee Blockum is the selecting official." Furthermore, Mark Wallace received this same email and did not object to human resources' identification of Blockum as the decision-maker. This email chain alone creates a genuine factual issue as to whether Wallace or Blockum was the selecting official. Thus, for purposes of opposing summary judgment, Plaintiff satisfies the knowledge element.

Case No. 1:09-CV-01960
Gwin, J.

Finally, considering the causation element, Defendant says there is no close temporal connection between Lyles's 2002 and 2003 EEOC complaints and its 2007 and 2008 decisions not to rehire Lyles, and thus no causation.  [Doc. 47-1 at 23.]  Plaintiff says Veterans Affairs retaliated against him at the first available opportunity.  Although it is a very close question, Lyles has established an issue regarding causation because a reasonable trier of fact could conclude that Veterans Affairs, at the first available opportunity to retaliate, declined to rehire Lyles.

A plaintiff may use temporal proximity between an employer learning of an EEOC charge and an adverse employment action to create an inference of causation.  *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).  A close temporal relationship is not necessary, however, to find causation.  *See Williams v. Nashville Network*, 132 F.3d 1123, 1132 (6th Cir. 1997) (finding causal connection where secretary forwarded plaintiff's applications for further consideration prior to EEOC complaint, but did not forward application post-EEOC complaint eleven months later). Indeed, a plaintiff can demonstrate a causal connection by showing some temporal connection coupled with other indicia of retaliatory conduct.  *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364 (6th Cir. 2001).  But generally, without more, the passage of time tends to negate the inference of retaliation.  *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (adverse employment action taken twenty months later suggests, by itself, no causality at all).

Here, five years separate Lyles's 2002 EEOC complaint and Veterans Affairs' 2007 reprisal. Of course, this alone suggests no causation.  Furthermore, it was no secret that Lyles's liberal exercise of his protected rights "made him a thorn in the Defendant's side," [Doc. 49 at 19], so one would expect immediate reprisal.  However, in this case, a mere two months after Lyles's first EEOC complaint, Lyles requested a transfer out of Veterans Affairs "in preparation for a custodial position

-10-

Case No. 1:09-CV-01960
Gwin, J.

he was promised by the [United States Postal Service]." [Doc. 47-1 at 4.] Thus, Veterans Affairs'

first need to retaliate was not until 2007 when Lyles reapplied for the DEU Position.  Therefore,

interpreting the facts most favorably to Plaintiff (as the Court must do), Plaintiff satisfies the

causation element.

Accordingly, Plaintiff has shown sufficient evidence to create a genuine dispute at the *prima*

*facie* stage of the *McDonnell Douglas* inquiry.

### *2. Pretext*

Veterans Affairs says it had legitimate, nonretaliatory reasons not to rehire Lyles.  Recall,

Plaintiff's coworkers lodged numerous complaints about his work performance and general

demeanor.  [Doc. 49 at 6.]  Moreover, Lyles himself expressed dissatisfaction about his job as a

telephone operator and requested a transfer.  [Doc. 47-2 at 30.]  To be sure, Plaintiff's work-related

troubles were not limited to Veterans Affairs—both the United States Postal Service and the

National Parks Service terminated him.

Defendant's proffered reasons have both a basis in fact and are sufficient to warrant its

decision not to rehire Plaintiff.  Therefore, to demonstrate pretext, Lyles must show that Defendant's

proffered reasons did not actually motive its decision.  *See Abdulnour v. Campbell Soup Supply Co.,*

*502 F.3d 496, 502 (6th Cir. 2007)* (A plaintiff demonstrates pretext by showing that the proffered

reason (1) has no basis in fact, (2) did not actually motivate defendant's challenged conduct, or (3)

was insufficient to warrant the challenged conduct.).

In evaluating a plaintiff's rebuttal evidence, a court considers whether, viewing the evidence

before it and drawing reasonable inferences in favor of the plaintiff, a reasonable jury could find that

the defendant's reason for not rehiring the plaintiff was pretextual.  *See Thomas v. Cohen,* 453 F.3d

-11-

Case No. 1:09-CV-01960
Gwin, J.

657, 660 (6th Cir. 2004). "In this type of showing, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Imwalle v. Reliance Medical Products*, 515 F.3d 531, 546 (6th Cir. 2008) (emphasis in original). In other words, the plaintiff must show "that the sheer weight of the circumstantial evidence . . . makes it more likely than not that the employer's explanation is a pretext, or coverup." *Abdulnour*, 502 F.3d at 503.

Here, Lyles offers circumstantial evidence that the Defendant's refusal to rehire was not motivated by his supposed poor work performance. First, Plaintiff reminds the Court that Veterans Affairs did not substantiate the coworker complaints and never formally disciplined him. Additionally, Plaintiff points to his satisfactory evaluations. Finally, and most persuasively, Plaintiff says Blockum's "explosion" after learning of Plaintiff's first EEOC complaint against Veterans Affairs manifests Defendant's true intentions.

The weight of this evidence makes out an issue whether Defendant's claimed reason for terminating Lyles—primarily his poor work performance—was a mere pretext for an improper motive. Thus, a jury could conclude that Defendant was motivated by retaliation in not rehiring Lyles. Therefore, the Court believes a trial to be the best forum to resolve the parties' differing versions of the dispute. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's retaliation claim.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion for summary judgment

-12-

Case No. 1:09-CV-01960
Gwin, J.

and **DISMISSES** as moot Defendant's motion for leave to file Charles Franks's amended

declaration.

      IT IS SO ORDERED.


Dated: September 22, 2010                        s/         *James S. Gwin*       
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE